Comstock *v.* Buchanan.

———————• • •———————

ELISHA COMSTOCK *vs.* COE S. BUCHANAN, impleaded &c.

One member of a partnership firm cannot become the individual owner of the partnership property, without the consent, and against the wishes, of the other member.

Although one partner may sell the property of the firm, and give a good title, to a third party, he cannot sell to himself.

A sale to himself is simply void; no right or interest passes; the legal and equitable title remains as it was before the attempted transfer. It is still the property of the firm, though standing in the name of the individual partner.

Thus, where stock belonging to a partnership firm was surrendered by one of the partners, without the knowledge or consent of his partner, to the company, he representing to the secretary that he had authority from, and the consent of, his partner to do so, and procured new scrip to be issued to him, in his own name, in lieu thereof; *Held* that the transfer was fraudulent and

Comstock *v.* Buchanan.

void; and that an assignee of the partner not consenting to the transfer could maintain an action to have the stock restored, and the title thereto placed in the name and under the control of its rightful owners, subject to such equities as existed against it at the time of the sale to him.

APPEAL by the defendant from a judgment entered at a special term.

The plaintiff, in his complaint, averred that the defendant the Pioneer Paper Company, was a corporation duly organized under and by virtue of the laws of the State of New York, and having a place of business, and located in the town of Milton, in the county of Saratoga; that said corporation had been in existence during the last four years, or about that time, and before the commencement of this action; that the business of said corporation is the manufacturing of a kind of paper called straw print; that the capital of said corporation is and was $30,000, which is divided into three hundred shares, of $100 a share; that at the time of the organization of said corporation, and previous thereto, the defendant Coe S. Buchanan, and one Solomon A. Parks, were partners in business under the name of S. A. Parks & Company; that as such partners they subscribed for and became the equal owners of 198 shares of the stock of said Pioneer Paper Company, of $100 each share; that said stock so owned by the said S. A. Parks & Co. constituted a majority of the stock of said company; that scrip was duly issued to the stockholders, and, among others, the scrip for the stock belonging to the said S. A. Parks and Co., was issued by the said Pioneer Paper Company, and the same was delivered to the defendant Coe S. Buchanan; that about the year 1861, or thereabouts, the defendant Coe S. Buchanan, returned to the secretary of said Pioneer Paper Company, scrip representing stock of the said company, belonging to, and standing in the name of the said S. A. Parks & Co., as above stated, to the amount of $11,300, and then and there represented to said secretary, that he, the said Buchanan, had

authority of, and consent from, his partner, the said Solomon A. Parks, authorizing him, the said Buchanan, to deliver up and surrender to said Pioneer Paper Company the said scrip last mentioned, amounting to $11,300 of said stock, and to receive from said Pioneer Paper Company other and new scrip therefor, running to and issued in the name of the said defendant Coe S. Buchanan; that such secretary, believing and confiding in said representations, and also believing said Buchanan had authority as a partner of the said Parks, and supposing it right so to do, received a surrender of said scrip then belonging to S. A. Parks & Co., to the amount of $11,300, and thereupon issued new scrip therefor to the said Buchanan solely, and entered such transfer on the books of said Pioneer Paper Company, so that it appears on the books of said paper company that said Buchanan is the sole owner of said last mentioned stock, and solely entitled to vote and receive the dividends thereon; that in fact and in truth the said Buchanan had no authority or consent from Parks to surrender said scrip or stock belonging to said Parks & Co., or to take from said Pioneer Paper Company new or other scrip therefor, running to himself, or to have such transfer of stock to said Buchanan entered upon the books of said Pioneer Paper Company; that such representations of said Buchanan were false, and were made by him for the fraudulent purpose of obtaining the stock without right and against the will of said Parks; that afterwards the said Parks executed a transfer of all his right, title and interest in and to said stock, either legal or equitable, being the equal, undivided half thereof, both that which now stands on the books of the Pioneer Paper Company in the name of S. A. Parks & Co., and also that which stands in the name of said Buchanan on said books, including all that originally stood in the name of S. A. Parks & Co., as herein before mentioned, to the plaintiff; that

afterwards and before the commencement of this action, the plaintiff notified the defendant, Buchanan, of the transfer by Parks to the plaintiff of his right, title and interest in and to said stock, and demanded of Buchanan that he surrender up said scrip issued to him of said $11,300, of stock belonging to Parks & Co., so that new scrip could be issued therefor to the plaintiff and said Buchanan jointly; but Buchanan thereupon refused to do so, and claims that he is the absolute owner thereof; that the said Pioneer Paper Company is willing to cancel said scrip so issued to Buchanan solely, if the same shall be returned to them and surrendered for that purpose, and correct their books accordingly.

Wherefore the plaintiff demanded a judgment declaring that the surrender of said scrip belonging to Parks & Co., by said Buchanan to the Pioneer Paper Company, and the issuing new scrip therefor, to and in the name of said Buchanan solely, was fraudulent and void against the said Parks, and is void against the plaintiff as the grantee or assignee of Parks, and requiring the said Buchanan to deliver and surrender up such scrip to be canceled; and that the defendant, the Pioneer Paper Company, be authorized, directed and required to cancel the transfer of said stock to the defendant Buchanan, on the books of said company, and to issue new scrip therefor to the plaintiff and the said Buchanan jointly; or to make such other rule or order, and grant such relief to the plaintiff as should be agreeable to equity and good conscience, and that the plaintiff also recover costs of this action against the defendant Buchanan.

The defendant Buchanan, by his separate answer, admitted the organization of the Pioneer Paper Company, and admitted its general business, as stated in the complaint. He further stated, that about May 1, 1856, he owned certain real estate, water power, and the buildings thereupon, situate in Milton, and certain machinery and

Comstock *v.* Buchanan.

personal property adapted to the manufacture of paper, subject to the equitable right of said Parks, under a contract to purchase a share thereof. That it was then and there agreed between said Parks and this defendant, that they should become general partners under the firm name of "S. A. Parks & Co." That one half of said real estate should be conveyed to Parks, and he should pay for one sixth thereof to make one half, at the rate of ten thousand dollars, and that he should become one half owner of the personal property, by making the proper charges therefor against him upon the company books. That in pursuance of that agreement, this defendant conveyed to said Parks the undivided half of said real estate, and took back a mortgage for $4000, in part payment of said purchase money, and the $1000 balance of said purchase money was not paid by said Parks, but was charged against him upon the company books, in addition to charges for his share of the personal property. That at that time, without counting the amount of said mortgage, Parks had less than $1000 capital in the concern. That the concern then owned real and personal estate worth about $13,000, and the balance of said capital belonged to this defendant. That the partnership agreement was verbal, and by its terms, among other things, Parks was to superintend the manufacturing department, and Buchanan was to manage all the other business. That Buchanan was to be allowed interest upon his excess of capital and advances, and the profits to be equally divided, and the losses to be borne equally by each party. That said defendant and Parks carried on business as such partners until March, 1858, when the buildings and machinery, and other personal property owned by them, were mainly consumed by fire, and the partnership was then largely in debt. That it was not then known exactly how the joint affairs would turn out, and how much the remaining property would bring. That at that time

said partnership practically ceased to exist, and it has never since done much business, except erecting new buildings and paying its debts and winding up its affairs. That upon further investigation it had been ascertained that said partnership could not pay its debts after said loss by fire, and that the amount of such deficiency was about $8500, over and above the amount received for insurance and from all other assets. That shortly after said loss by fire, it was agreed between Buchanan and Parks, in substance and effect, and they should proceed to rebuild, and as soon as practicable that said Buchanan should get a corporation organized, for the purpose of taking the real estate and other property of the firm of S. A. Parks & Co. That in pursuance of said agreement, the whole insurance money was collected and charged to this defendant, amounting to about $7500. That this defendant advanced further capital to rebuild said property in part, and the firm became indebted for the residue, and the work proceeded. That in the meantime preliminary measures were taken to organize the corporation, and the same was perfected, and the articles of association filed about April 1, 1859. That about March, 1859, for the purpose of closing up the old firm, and for convenience, it was agreed between this defendant and said Parks, that the name of S. A. Parks & Co. should be used to subscribe for stock of such new corporation. That the firm property should all be sold to said corporation, and with a portion of the proceeds thereof the said stock should be paid up; that this defendant should have the right to sell said stock or use it to pay the debts of the firm, and to reimburse him for moneys advanced by him to pay such debts, so far as the same should be necessary for that purpose; and that after the payment of such debts and liabilities, if any of such stock remained, it should be divided between said parties, according to their interest in the capital of the firm, pro rata. That said corporation was

Comstock *v.* Buchanan.

afterwards organized, as stated in the complaint. That in pursuance of said agreement between this defendant and Parks, the sum of $19,800, or 198 shares of the capital stock was subscribed for in the name of S. A. Parks & Co. That the assets of said firm were sold to said corporation, and $19,800 of the proceeds thereof was appropriated for the payment of said 198 shares. That at the time said corporation was organized, the real estate was subject to an old mortgage of about $2000, and for the purpose of securing the corporation against the same, $2500 of the capital stock was assigned to it by S. A. Parks & Co., about April 1, 1859. That about June 27, 1859, $6000· more of said stock was transferred by said S. A. Parks & Co. to Isaiah Blood, to borrow money upon, to be used to pay said firm debts, or to reimburse this defendant for debts already paid by him. That in the year 1859, said firm debts were pressing, and the firm could not meet them without the sale or transfer of the stock held in the name of said firm, except as this defendant ·used his individual credit and means for that purpose. That said stock could not then be sold in market for a sum exceeding sixty cents on the dollar. That thereupon, about December 31, 1859, the said firm sold and transferred 113 shares of said stock, standing in their name, to this defendant, individually. That said transfer was made in pursuance of the previous agreement between said Parks and this defendant. That Parks knew of said transfer at the time, or became aware of it soon after, and never made any objection thereto. until about January, 1863. That afterwards Parks assented to said sale, and it was agreed between him and Buchanan that he should receive for his share stock for only the amount of his capital. That at the time this defendant took said transfer he was in advance to said firm more than $11,300, and the full value of the stock would not then reimburse him for his advances for the firm, over and above the advances of

Parks. That this defendant, ever since the date of said transfer, has claimed that he has acquired an exclusive interest in said 113 shares, and became the sole owner thereof, and has used and treated it as his individual property. That upon a fair accounting between him and said Parks, it will be found that more than said 113 shares of stock belongs to this defendant under said agreement. The defendant admitted that when said transfer was made to him, the old scrip to that amount, issued to S. A. Parks & Co., was surrendered, and new scrip therefor issued to him, and so it appears upon the books of said corporation. That it appears on the books of said paper company that this defendant is the sole owner of said last mentioned stock, and solely entitled to vote and receive the dividends thereon. The defendant further states that he has always been willing and ready that Parks should have his pro rata share of the stock of said corporation, in pursuance of the agreement above stated, provided, upon a settlement between them, any such share should be found due said Parks, of which facts Comstock had full knowledge before the pretended transfer. The defendant admitted that before this action was commenced the plaintiff gave notice to him that he had received a transfer from Parks, and he made the demand substantially as stated in the complaint, and this defendant declined to comply therewith, but stated then in substance as he had done before to Parks, and to the plaintiff, that he was ready and willing to settle the affairs of the said firm of S. A. Parks & Co., and if any share of said stock was coming to Parks under their agreement, he was willing that the same be transferred to him or his assignee, and he has always been ready and willing to do so.

The defendant further stated, upon his information and belief, that said Parks was interested in the matters in question in this action, and he insisted that he was a necessary party hereto.

Each and every allegation contained in the complaint not admitted, or which was inconsistent with the facts stated in the answer, was denied. The action came on for trial before Justice Bockes at a special term of the Supreme Court, held at his chambers at Saratoga Springs, February 3, 1864.

The plaintiff read in evidence an assignment, duly stamped, under seal, of which the following is a copy:

"In consideration of one thousand dollars to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby sell, assign, transfer and set over unto Elisha Comstock all my right, title and interest in and to all stock of the Pioneer Paper Company, either standing in my name on the books of said company, or standing in the name of S. A. Parks & Co., or in the name of Coe S. Buchanan, or in the name of any other person, excepting one thousand dollars of stock I this day purchased of said Elisha Comstock, and he assigned and transferred to me, and the same stands in my name on the books of the company.

And I further agree and covenant that I am the owner, either legal or equitable, in one undivided half of nineteen thousand eight hundred dollars of said Pioneer Paper Company stock, which originally stood on the books of said company in the name of S. A. Parks & Co., and have lawful right to convey the same.

Witness my hand seal, this 17th day of June, 1863.

SOLOMON A. PARKS. [L. S.]

Executed in presence of Robert Speir."

The execution of this instrument was duly acknowledged.

It was admitted that the change of stock by the defendant Buchanan on the books of the Pioneer Paper Company was made in December, 1859. The plaintiff then rested.

The defendant Buchanan moved for a nonsuit, or that the complaint be dismissed as to him, on the grounds,

1st. That the facts proved, and admitted by the pleadings, constitute no cause of action, and do not entitle the plaintiff to any relief.

2d. That it appears from the pleadings that Buchanan had full right to make the transfer in question.

Motion denied, and defendant duly excepted.

At the close of the evidence the defendant Buchanan renewed his motion to dismiss the complaint in this action, on the grounds,

1st. That the facts admitted and proved constitute no cause of action.

2d. That the facts proved that the partnership of S. A. Parks & Co. has ceased to do business for several years, and has been practically dissolved; therefore no action will lie to reform it or restore it to life.

3d. This complaint does not ask for an account or final settlement. This court will not trifle with parties, or be allowed to be trifled with, by a mere idle action which cannot settle the rights of the parties.

4th. That the undisputed proof shows that the transfer in question was in pursuance of the prior authority, or was ratified by the subsequent assent of Parks, before the assignment to the plaintiff.

5th. That the plaintiff has no right to bring this action. The assignment to him is a sham and a fraud upon the court, and he is not the party in interest.

6th. Even if any interest is conveyed to the plaintiff, this action cannot be maintained without bringing in Parks as a party.

7th. That this action is an idle ceremony, because a second action would become necessary to take an account and close up the affairs, (if this action be sustained,) in which last action the same evidence would have to be repeated.

Comstock *v.* Buchanan.

8th. No averment is made that the defendant is not responsible, and no receiver is therefore asked.

9th. No account or settlement is asked; but, on the contrary, that same is just what he does not ask for, and is unwilling to allow.

10th. No fraud is proved against the defendant.

11th. There is no averment or proof that the debts of the concern have not exhausted the full value of the stock at its highest value at any time up to the commencement of this action.

The court refused to dismiss the complaint as to Buchanan; to which refusal the defendant duly excepted. The court afterwards made a decision in writing, as follows:

" This action having been brought on to trial before the undersigned, one of the justices of this court, without a jury, and after hearing the proofs and allegations of the parties, and the arguments of their counsel, I do find and state the facts of the case as follows:

1st. The defendant the Pioneer Paper Company is a corporation duly organized as stated in the complaint, and was organized about four years ago, since which it has been, and still is, doing business as an incorporated company; that its capital is $30,000, divided into shares of $100 each, as is also in the complaint stated.

2d. At and prior to the organization of said company, the defendant Coe S. Buchanan and Solomon A. Parks were partners in business under the firm name of " S. A. Parks & Co.," and as such partners, and in the name of the firm, they subscribed for and took 198 shares of the stock of said paper company, and thereupon said company issued to them, in their said firm name, scrip in the usual form therefor.

3d. Afterwards, and about December, 1859, the defendant Buchanan returned to said company the scrip for 113 shares of said stock so as aforesaid issued to, and held by, said firm of S. A. Parks & Co., and made a transfer thereof

and of said stock, on the books of the company, to himself, and procured a cancellation of the same, and obtained in the place thereof an issue by the company of new scrip therefor to himself, and since then has insisted, and still insists, that such stock is his own individual property, and not the property of said firm of S. A. Parks & Co., and that he has a right to control and deal with it as his own separate and individual property in all respects, and it so appears on the books of said paper company.

4th. Such transfer, and the cancellation of said scrip and the issuing to Buchanan of new scrip by said company in place of that surrendered and canceled, were, and each of such acts was, without the authority, consent or approval of said Parks, nor did he ever ratify, sanction or confirm the same, and such acts and proceedings were and still are wholly unauthorized.

5th. The firm business of S. A. Parks & Co. has never been closed and adjusted, although the general business ceased about the time of the organization of the said paper company, and a suit in this court is now pending for an accounting, having for its object the closing up of said firm and the adjustment of its affairs.

6th. On the 17th of June, 1863, and prior to the commencement of the aforesaid action for an accounting, said Parks sold, assigned and transferred to the plaintiff, Elisha Comstock, all his right, title and interest in and to said stock, since which time said plaintiff has been, and still is, the equitable owner of the right and interest of said Parks therein.

And I do decide and adjudge, as matter of law:

1st. That said surrender and cancellation of said scrip issued to the firm of S. A. Parks & Co., and the transfer thereof and of said stock by said Buchanan to himself, and the issuing of scrip to said Buchanan in lieu thereof, were and are, and each of those acts was and is, fraudulent and void.

2d. That said scrip issued to Buchanan in the place of said scrip originally issued to the firm of S. A. Parks & Co., should be surrendered up and canceled.

3d. That said Pioneer Paper Company should cancel said fraudulent and void transfers on its books, and should further correct its books by erasing the name of Coe S. Buchanan as the holder and owner of the stock so illegally transferred to him.

4th. That the plaintiff, since the aforesaid transfer to him by said Parks, has been the owner of all the right, title and interest of said Parks in and to said stock, subject to all equities in regard thereto as between said Parks and Buchanan, existing at the time of said transfer by Parks to him.

5th. That said plaintiff and Buchanan have been, since said transfer last mentioned, joint owners of said stock, subject, as between themselves, to all equities aforesaid, and the said Pioneer Paper Company should, by its proper officer, issue its scrip to said Buchanan and Comstock jointly therefor.

6th. That the plaintiff is entitled to recover against the defendant his costs and disbursements of his action, to be adjusted, together with an additional allowance of fifty dollars.

And judgment is ordered and awarded accordingly."

The following opinion was given by the justice at special term.

BOCKES, J. I have not leisure to elaborate my views in this case, but will state very briefly my conclusions.

It will hardly be pretended that one member of a firm can become the individual owner of firm property without the consent and against the wishes of the other member. One may sell the property of the firm and give good title to the purchaser, being some third person, but he cannot sell to himself. A transaction of that character is simply

void; no right or title passes by it. The title to the property remains where it was before the attempted transfer. Each member of a partnership occupies the position of agent or trustee of the firm, and from his position is incapacitated from becoming the purchaser of the partnership property against the will of the other members. It is his duty to obtain the best terms he honestly can on making a sale, and this duty is incompatible with his wish to buy. So the court will presume against such transaction, and will, on the complaint of other members, hold it injurious, because against a principle of right, and will not permit this presumption to be contradicted. As I had occasion to remark in a recent case, a principle of public policy and natural equity intervenes, and denounces the act as unfair, because accomplished under circumstances of temptation which might lead to violation of just obligations and duties.

In such case the law declares the act a fraud upon the rights of the copartner, and the party is not relieved from the consequences of his act by showing that he has allowed, or is willing to allow the full value of the property. However the case may stand in this regard, the court, on proper application, will at once annul the transaction.

But it is urged that there was, in this case, consent given to the transfer by an original understanding or agreement between Parks and Buchanan, and also by a ratification which, as is said, was equivalent to an original authority.

1st. I find no original authority by which Buchanan could lawfully transfer the stock standing in the firm name, and being firm property, to himself. No such authority existed in writing, nor was there any resting in parol, even admitting that it could be conferred by an oral agreement to that effect. The agreement (if what Buchanan testified to constituted an agreement) was only that he might sell or use the stock to raise money with which to pay off the debts of the firm; not that he might transfer

the stock to himself. But as I understand the answer, no issue is raised on the question of an original authority from Parks to make the transfer. In the complaint, want of authority is directly averred. I do not see that the answer denies this averment, either directly or by necessary implication. However this may be, an original authority to make the transfer is not established by the evidence; on the contrary, it seems to me well proved that the transfer was without original authority.

2d. After a careful consideration of the evidence, I am led to the conclusion that no ratification or sanction of the transfer, by Parks, is established. Parks swears distinctly that there was none, or to facts which renders such the necessary conclusion, and Buchanan does not swear that there were any.

The question then is simply this: Whether one member of a partnership can sell and transfer the firm property to himself, without the assent and against the will of his copartner. It has been shown above that this cannot be done. Such transaction is simply void, and no title passes by it. It follows that the cancellation of the scrip held in the name of "S. A. Parks & Co.," through Buchanan's procurement, and his transfer to himself, and the issuing to him of new scrip in his own name, by the paper company, was unauthorized, fraudulent in law, and void.

Prior to his assignment to the plaintiff, Parks had good cause of complaint as regards such acts, and by the assignment the plaintiff succeeds to his rights. He was then joint owner of the stock with Buchanan, not a partner but a joint owner; subject to all equities existing at the time of the transfer, as between Parks and Buchanan.

It is insisted that no decree in this case can be made without an accounting. In this, however, I think the counsel is under a mistake. This action is not brought for the purpose of determining the rights of the parties to this stock, or in other words, for the purpose of settling

the proportion to which they are respectively entitled. Hence it has no necessary connection with the matter of an accounting. While the subject matter of this suit might, perhaps, be incorporated in an action for that purpose, it is still a separate and distinct matter in all respects.

Mr. Buchanan has no right to hold on to this property in his own name, not even while an accounting between him and his late partner is progressing. He has committed an unlawful act which in law is presumed to be prejudicial to his joint owner of the property; in this case an act which gives him the sole use of stock in a corporation, which use belongs to the joint owners. It does not lie with him to say that he will make it all right on or after an accounting. As to this suit he must stand or fall by the legality or illegality of his acts which are here complained of. He cannot complain if placed where he stood before he attempted the illegal transfer, and he should be placed back in that position. This will not give the property to Parks nor to the plaintiff, who now stands, as regards the stock, in Parks' shoes. But it will be put to the persons who are the joint owners, subject to all equities as between Parks and Buchanan existing at the time of the assignment to the plaintiff. These equities are now in process of adjustment in another suit.

It is not right that Buchanan should, through his own unlawful act, wield the power and influence in the corporation, of a sole owner, not even while a suit is progressing to determine the rights of the parties to the stock. By this transfer he takes the law into his own hands, and determines for himself that he is sole owner. This the law will not tolerate. The stock should stand in the names of the joint owners until the equities in regard to it are adjusted and decided.

But in whose name or names should the stock now stand on the books of the company? It is not right, as I have above stated, as it now stands to Buchanan, nor would

it be right to put it in the name either of Parks or of the plaintiff, nor yet right to put it back in the name of the late firm of S. A. Parks & Co.; Parks has no right whatever in it, and the firm, as to this stock, was ended by the assignment to the plaintiff. It must therefore go on the books to Buchanan and Comstock, present joint owners. It will stand, of course, subject to the equities of all parties, to be determined on the accounting. But until that point is reached and their rights settled and decreed, the legal title is in the joint owners, subject to all equities between them. It is quite possible, indeed is probable, that their interests are unequal, but their rights in this regard cannot be determined in this suit, and whether equal or unequal, is only matter of conjecture here. Of course Comstock obtains by this assignment only such undivided share and right in the stock as Parks had, whom he now represents.

I held on the trial that the assignment by Parks to the plaintiff was absolute, and on reëxamining the question, I am confirmed in my opinion. The sale is evidenced by a paper executed under seal, and must be held to evidence the transaction. This shows an absolute and unconditional sale. The paper executed at the same time has no countervailing force, for several reasons. It is not under seal, not stamped, nor does it in terms show Parks to be a necessary party to this action.

It is further urged that the suit is useless, and that the complaint should be dismissed for frivolity; that no substantial good can result from it to the plaintiff.

I think the suggestions above made, in regard to the use which Buchanan may make of the stock, claiming it as sole owner, and it so appearing on the books of the company, is a full and perfect answer to this objection. Besides, it does not lie with Buchanan to say that his own illegal act is of no consequence, while he insists on it as conferring great and substantial benefits on himself.

It seems very clear to me that the plaintiff is entitled to the relief substantially as demanded.

From the judgment ordered at the special term, the defendant Buchanan appealed to the general term.

*E. F. Bullard*, for the appellant.

*A. Pond*, for the respondent.

*By the Court*, JAMES, J. This action is brought by the assignee of the interest of one member of a copartnership, to set aside a transfer, by another partner, to himself, of certain capital stock of a corporation, owned and held by said copartnership.

None of the exceptions to the findings of fact are well taken. The evidence was not only ample to sustain the findings, but a different finding would have been in disregard of the whole scope and force of the testimony. In fact the exceptions to the findings of fact were not much pressed on the argument. The facts of the case therefore must be regarded as established by the findings of the court below.

The Pioneer Paper Company is also made a defendant, and the prayer of the complaint is, that the transfer of the capital stock on the company's books from S. A. Parks & Co. to Coe S. Buchanan be declared fraudulent and void as against Parks and the assignee of his interest; that the new scrip issued to Buchanan at the time of said transfer be required to be delivered up to be canceled; that said corporation be required to cancel the same and to issue other scrip therefor in the name of the plaintiff and Buchanan jointly.

The decree of the special term is in accordance with the prayer, except that it declares the plaintiff's right to such stock to be subordinate to all equities existing against it,

Comstock *v.* Buchanan.

as between Parks and Buchanan, at the time of the transfer to the plaintiff.

As was said by the justice who tried this cause, "one member of a firm cannot become the individual owner of the firm property without the consent, and against the wishes, of the other member." One partner may sell the property of the firm and give a good title to a third party, but he cannot sell to himself. A sale to himself is simply void; no right or interest passes; the legal and equitable title remains as it was before the attempted transfer; it is still the property of the firm, though standing in the name of the individual partner. (*Story on Part.* § 101. *Willcox* v. *Smith*, 26 *Barb.* 351, 2. *Comstock* v. *White*, 31 *id.* 301.)

It being established by the finding, that the 113 shares of stock in dispute was the property of the firm of S. A. Parks & Co.; that its transfer by Buchanan to himself was without the knowledge, or consent, or authority of his copartners, it follows that the transfer was fraudulent and void; that the stock should be restored, the title replaced on the books of the corporation, new scrip issued, and the stock and scrip placed under the control and management of its rightful owner.

At the time of the transfer of this stock there had been no dissolution of the copartnership, and from aught that appears from the case, it still remains undissolved, although its general business was long since suspended. It was insisted that this assignment by Parks to the plaintiff worked a dissolution; and there is no doubt that an assignment by one partner of all his right, title and interest in the copartnership property would have that effect. (17 *John.* 525. 6 *id.* 417. 5 *John. Ch.* 144.) But this was not such an assignment; it was a sale and transfer of the interest, merely, which Parks had in this particular stock.

Parks did not thereby dispose of or release his rights in the partnership interest remaining, nor did Comstock be-

come a member of the firm.. The copartnership remained as before, and Comstock became a tenant in common with Buchanan, of the corporation stock, subject to the equities of Buchanan as a member of the copartnership. Subject to such equities, as tenant in common, Comstock had a separate and distinct, although individual interest, in said stock. Standing in his own name alone, Buchanan might dispose of the whole stock and pass a good title; but standing in the name of Buchanan and Comstock, he could not. A tenant in common cannot dispose of the interest of his co-tenant in joint property.

The plaintiff does not bring this action as a partner, but as a co-tenant; he does not sue for a dissolution of the copartnership or for an accounting, but to compel a restoration of property fraudulently taken.

It therefore being established that the stock was copartnership property; that the plaintiff has become the owner of one partner's interest in said stock subject to the equities and rights of the firm; that the nominal title to said stock was fraudulently transferred from the firm to one of said partners, the plaintiff is entitled to have that stock restored, and its title placed in the name and under the control of its rightful owners, subject to such equities as existed against it at the time of sale to him.

It may be, as intimated, that there is no precedent for such a decree; it may be that this is the first case of the kind ever brought before the courts. However that may be, there is manifest propriety in entertaining the action; the judgment of the court below seems to be equitable and just, protecting and preserving the rights of all the parties, and should therefore be affirmed. (*a*)

(*a*) The above decision was, on appeal to the Court of Appeals, affirmed by that court; the following opinion being delivered:

MASON, J. None of the findings of the judge in this case are without some evidence to sustain them, and his findings are therefore conclusive upon this

Comstock *v.* Buchanan.

court, and the judgment of this court must be pronounced upon the facts as found. (*Fellows* v. *Northrup*, 39 *N. Y. Rep.* 117.)

Assuming the facts as found by the judge at special term, this transfer of stock standing in the name of, and belonging to, the firm of Parks & Co., by the other partner, Buchanan, to himself, and procuring this company to accept a surrender of the stock and to issue new certificates of stock to himself alone, cannot be sustained in a court of equity. (*The New York Central Ins. Co.* v. *The National Protection Insurance Co.*, 20 *Barb.* 468. 4 *Kern.* 85.) Each partner, while acting within the scope of the partnership business, is deemed to be the authorized agent of the firm; and it is upon this principle that one of the partners can bind his associates. (2 *Comst.* 523. *Worrall* v. *Munn*, 1 *Seld.* 229, 239. *Story on Partnership*, §§ 1, 117.) When he steps out of the scope of the partnership business, and undertakes to transfer the property of the copartnership to himself, he acts beyond the authority of his agency, and his acts become invalid and cannot be sustained. (20 *Barb.* 553. 31 *id.* 301. 36 *id.* 270, 276.)

This stock having been thus illegally transferred to the defendant, and he having procured from this company new certificates of stock to be issued to himself, a court of equity could not do less than was done in this case. (*Pollock* v. *The National Bank and another*, 3 *Selden*, 274. *Story on Partnership*, § 227. 2 *Story's Eq. Juris.* §§ 692–702.)

No question can be entertained, on this appeal, as to Parks being a necessary party. If he was a proper or necessary party, the defect fully appears upon the face of the complaint, and the defendant has waived it by his omission to demur to the complaint. (*Depuy* v. *Strong*, 4 *Trans. Appeals*, 239. 12 *Barb.* 18. 2 *Duer,* 169. 9 *How. Pr.* 247. 10 *Abb. Pr.* 134.) This furnishes, also, an answer to the defendant's offer of evidence in fols. 55 to 61 of the case, which was an offer to put in evidence paper No. 1. That evidence, if it could be admissible for any possible purpose, was to show that Parks had still some interest in the stock, and therefore should have been made a party. This evidence, however, was properly rejected, upon the grounds stated by the plaintiff's counsel. That agreement was without a revenue stamp, and there was no offer, even to excuse the omission. The assignment by Parks to the plaintiff was absolute and unconditional, and was under seal and stamped. The writing signed by Parks, Comstock and Wilson was not stamped. Nor was it under seal, and could not, therefore, qualify or vary the prior valid assignment under seal. (*Durgin* v. *Ireland*, 14 *N. Y. Rep.* 322. *Webb* v. *Rice*, 6 *Hill*, 219. 1 *id.* 608. *Nelson* v. *Sharp*, 4 *id.* 584. *Davidson* v. *Miner*, 9 *How.* 524.) The offer of the defendant to go into an accounting between him and Parks, with a view of showing that in the final distribution of assets between him and Parks, there would be coming to him more than this 113 shares of stock, and that he really was equitably entitled to a greater share than his copartner, Parks, was properly excluded.

The plaintiff's claim, in this action, to have this fraudulent and illegal transfer of stock by Buchanan, in the name of the firm, to himself, set aside, could

not be met by such a defense. The pleadings and the parties before the court will not permit such an accounting. In order to justify such an accounting, Parks was a necessary party to the action. (*Cummings* v. *Morris*, 25 *N. Y. Rep.* 625.) If the defendant desired to make such a defense, he should have insisted, at the proper time, that Parks be brought in. This he could have done by demurring to the complaint, and perhaps could have instituted a cross action, and have made both the plaintiff and Parks parties. (25 *N. Y. Rep.* 631, 634. *Durand* v. *Hankerson*, 39 *id.* 293.)

It seems there was then a suit pending between the defendant and Parks for a dissolution, and the winding up of their copartnership matters, and that suit properly involved this issue, and the court were right in excluding that issue from this action, which had for its object the setting aside of this fraudulent transfer of these stocks to himself, and requiring this company to cancel the issue to the defendant, and to issue new stock to the plaintiff and the defendant jointly, leaving all the equities of the copartners as they were. No injustice is done the defendant in this decree. He is simply deprived of an advantage which he thought to gain by his fraudulent and illegal conduct. This suit has no necessary connection with this matter of accounting between Parks and Buchanan, as the action is not brought for the purpose of settling the equitable rights of the parties to these stocks as a part and portion of the assets of the firm, and the defendant has no right to bring such an issue into the cause.

The judgment of the Supreme Court is right, and should be affirmed.

[CLINTON GENERAL TERM, July 12, 1864. *Potter*, *Bockes*, *James* and *Rosekrans*, Justices.]